# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **NICOLE ENERGY SERVICES, INC.,** | : | |
| Debtor/Appellant, | : | |
| v. | : | Case No. 08-CV-0463 |
| **LARRY J. MCCLATCHEY,** | : | JUDGE ALGENON L. MARBLEY |
| Trustee/Appellee. | : | |

## OPINION & ORDER

### I. INTRODUCTION

Appellee and bankruptcy trustee Larry J. McClatchey ("McClatchey") moves to dismiss the appeal (doc. no. 3) filed by Appellant and debtor Nicole Energy Services, Inc. For the reasons explained below, the Court **GRANTS** McClatchey's motion.

### II. BACKGROUND

#### A. Facts

This case is an appeal from bankruptcy case no. 03-67484, which involved the bankruptcy of debtor Nicole Energy Services, Inc. ("NES"), a natural gas marketing company. Freddie L. Fulson ("Fulson") is NES's President. He is also a NES shareholder and a shareholder in NES's parent company, Nicole Energy Marketing, Inc.

At the time the bankruptcy proceeding was filed, Columbia Gas Transmission Corporation ("Columbia Gas") and its affiliates had sued NES in Ohio state court alleging breach of contract claims against NES ("State Court Case"). In that case, NES filed a third-party complaint against Columbia Gas seeking millions of dollars for alleged under-credits by Columbia Gas under gas

gathering and transportation agreements between the companies. This unliquidated claim against Columbia Gas in the State Court Case was NES's greatest asset. During the course of NES's bankruptcy proceeding, McClatchey, as trustee for NES, assumed control of NES's State Court Case claims. Eventually, McClatchey negotiated a settlement of the State Court Case claims. The settlement was structured as a sale of NES's claims to Columbia Gas under an Asset Purchase Agreement ("the Sale").

In October of 2006, McClatchey filed a Motion to Sell Property Free and Clear of Liens ("Sale Motion") with the bankruptcy court, seeking approval of the Sale. NES and Fulson objected to the Sale. However, after conducting a three day evidentiary hearing on McClatchey's Sale Motion and the related objections, the bankruptcy court overruled the objections and approved the Sale.[1] On April 14, 2008, the bankruptcy court entered an Order Authorizing and Approving the Trustee's Sale Motion ("the Sale Order"). (Case No. 03-67484, doc. no. 461.)

NES and Fulson immediately sought, but were denied, a stay of the Sale Order pending appeal. On April 25, 2008 the sale closed and Columbia Gas transferred over three million dollars to McClatchey as trustee for NES's estate. (Case No. 03-67484, doc. no. 480.) In exchange, McClatchey delivered an assignment of the NES's claims against Columbia Gas.

## B. Procedural History

The bankruptcy court's approval of the Sale gave rise to three appeals.

First, on January 30, 2008, Fulson brought an action against the U.S. Bankruptcy Court in the United States District Court for the Southern District of Ohio, *Fulson v. U.S. Bankruptcy*

---

[1] The bankruptcy court also issued a 94 page Memorandum Opinion memorializing the legal and factual basis for its approval of the Sale. (Case No. 03-67484, doc. no. 453.)

*Court*, case no. 2:08-cv-90. In that action, Fulson sought an expedited remand of NES's State Court Case back to state court from the bankruptcy court, to which it had been removed.[2] On May 8, 2008, Fulson filed a motion seeking to stay the Sale Order. Judge Gregory L. Frost dismissed the case. Fulson appealed the dismissal to the Sixth Circuit Court of Appeals. On July 29, 2008, the Sixth Circuit dismissed Fulson's appeal as moot under 11 U.S.C. § 363(m) because Fulson had not obtained a stay of the Sale and the Sale had been consummated.[3]

Second, on May 13, 2008, NES filed a notice of appeal with this Court in the case *sub judice*. In this action, NES challenges the validity of the Sale Order. The notice of appeal did not list Fulson as a party to the appeal. Similarly, NES's Statement of Election, which states that NES elects to have its appeal heard before the United States District Court rather than the Bankruptcy Appellate Panel for the Sixth Circuit, does not list Fulson as an appellant.

On June 2, 2008, McClatchey moved for dismissal of the appeal on the grounds that it is moot under 11 U.S.C. § 363(m) because the sale that forms the basis of the appeal has already closed and has been consummated. NES has not responded to the motion to dismiss. In fact, NES had not made any filings in this case since its notice of appeal was filed[4] and appears to have abandoned its appeal. Instead, Fulson has opposed the motion to dismiss. He has also filed numerous additional motions and briefs in this case, even though he is a not party to this action.

---

[2] Ultimately, portions of the State Court Case were remanded back to Ohio state court on July 15, 2005, after the trustee took control of the State Court Case and requested remand. (Case No. 03-67484, doc. no. 222.)

[3] McClatchey has requested leave to file the Sixth Circuit's ruling as additional authority in support of his Motion to Dismiss in this case (doc. no. 11). That request is **GRANTED**.

[4] Including failing to file its appellant's brief pursuant to Fed. R. Bankr. P. 8009.

Third, on May 16, 2008, Fulson filed his own appeal challenging the Sale Order before Judge Frost, *Fulson v. McClatchey (In Re Nicole Energy Services, Inc.)*, Case No. 2:08-cv-478. Fulson's appeal is essentially identical to NES's appeal before this Court. McClatchey moved to dismiss Fulson's appeal as moot for the same reasons he asserts in the case *sub judice*. On August 14, 2008, Judge Frost granted McClatchey's motion and dismissed Fulson's appeal as moot.

### III. LAW & ANALYSIS

Under 11 U.S.C. § 363(m) of the Bankruptcy Code, NES was required to obtain a stay of the Sale Order and the consummation of the Sale itself to preserve this Court's ability to rule on the validity of the Sale of NES's State Court Case claims. Section 363(m) provides:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Based on the language of § 363(m), "[b]ankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of debtor's assets." *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1216 (6th Cir. 1996) (internal citations and quotation marks omitted). It is well established in the Sixth Circuit that failure to obtain a stay of a sale of an estate's assets to a good faith purchaser "limits appellate review of a consummated sale . . . regardless of the merits of legal arguments raised against it." *See, e.g., Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005)

(internal citations and quotation marks omitted); *accord Parker v. Goodman (In re Parker)*, 499 F.3d 616, 620–21 (6th Cir. 2007).

The bankruptcy mootness rule is "predicated on the particular need to encourage participation in bankruptcy asset sales and increase the value of the property of the estate by protecting good faith purchasers from modification by an appeals court." *Weingarten Nostat, Inc. v. Serv. Merch. Co.,* 396 F.3d 737, 741 (6th Cir. 2005). The term "good faith purchaser" is not defined in the bankruptcy code. The courts have defined a "good faith purchaser" as one who purchases the assets "for value" and "in good faith." *Made in Detroit, Inc.*, 414 F.3d at 581 (internal citations omitted). "To show [a] lack of good faith, the debtor must demonstrate that there was fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted an attempt to take grossly unfair advantage of other bidders." *255 Park Plaza Assocs.*, 100 F.3d at 1218.

In this case, the record shows that the bankruptcy court approved the Sale on April 14, 2008, the Sale was consummated on April 25, 2008, and NES and Fulson both failed to obtain a stay of that Sale in the bankruptcy court or the district court. Columbia Gas paid a purchase price of $2.7 million for the assets at issue.[5] This is sufficient to meet the "for value" prong of a good faith purchase.

Furthermore, there is no evidence of any fraud or collusion between Columbia Gas and McClatchey.[6] In fact, the record below demonstrates that the bankruptcy court carefully and

---

[5] Columbia Gas paid an additional $621,234.75 in administrative fees to cover the trustee's legal expenses.

[6] Fulson asserts vague and conclusory claims of fraud and collusion in his "Memorandum Response and Objection to Appellee Motion to Dismiss the Appeal." (Doc. no.

thoroughly evaluated whether the Asset Purchase Agreement was fair and reasonable, was entered into at arms length, and was in good faith and concluded that it was. (Case No. 03-67484, doc. no. 453, pp. 48-51.) Neither NES nor Fulson have presented any evidence undermining that ruling. Therefore, this Court concludes that Columbia Gas was a good faith purchaser.

Because NES failed to obtain the required stays prior to the consummation of the Sale, and because the Sale of NES's claims was to a good faith purchaser, this Court concurs with both Judge Frost's and the Sixth Circuit Court of Appeals' rulings in the related appeals and finds that NES's appeal is statutorily moot. Consequently, this case is dismissed. *See Sugarloaf Indus. & Mktg. Co., v. Quaker City Castings, Inc. (In re Quaker City Castings, Inc.)*, No. 04-8045, 2005 WL 3078607, at *7 (6th Cir. BAP Nov. 18, 2005) (dismissal is appropriate when conclusory allegations of fraud are not supported by evidence).

As an administrative matter, the Court notes that Fulson has filed numerous motions and opposition briefs in this case, despite the fact that this is NES's appeal, NES has its own counsel, Fulson was not named on the notice of appeal as an appellant, Fulson has filed and lost an identical appeal in his own name, and Fulson has not formally motioned to intervene in this case.

---

5.) However, as Fulson is not the appellant in this matter, has not been granted leave to intervene, and has already lost his own appeal on exactly the same grounds, the Court believes Fulson has no basis to oppose motions filed in this case. Nevertheless, the Court has reviewed his "opposition brief." In his various filings in this matter, Fulson accuses: McClatchey, Columbia Gas, the Bankruptcy Court, the Clerk of the Bankruptcy Court, and the Clerk of the Sixth Circuit Court of Appeals of fraud. (Doc. no. 5, p. 3-5; doc. no. 13, p. 1.) As far as the Court can discern, the only basis for Fulson's accusations are that: McClatchey agreed to the settlement with Columbia Gas; the bankruptcy court approved the Sale; Columbia Gas sued NES in the State Court Case and "wanted to protect their money from the jury trial;" and his speculation that Columbia Gas "must have had a relationship with the bankruptcy Court Judge, to gain his support." (*See* doc. no. 5, Memorandum Response & Objection to Appellee Motion to Dismiss the Appeal, p. 4.) Such speculation is insufficient evidence to establish a lack of good faith even if Fulson were permitted to intervene in this appeal.

As Fulson is proceeding *pro se*, the Court will construe his vociferous filings as requesting permission to intervene in this case. However, as the underlying appeal is statutorily moot, his requests to intervene and various motions are also **MOOT**.

## IV.  CONCLUSION

For the reasons set forth above, Appellee McClatchey's Motion to Dismiss the Appeal (doc. no. 3) is **GRANTED**.

**IT IS SO ORDERED.**

                                             **s/Algenon L. Marbley**
                                           **ALGENON L. MARBLEY**
                                           **UNITED STATES DISTRICT COURT**

**Dated: March 4, 2009**